NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESHON MITCHELL, | Civil Action No. 2:10-CV-03366 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Date July 20, 2011 |

**Wigenton, District Judge,**

Before the Court is Plaintiff Eshon Mitchell's appeal of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner"), with respect to Administrative Law Judge Richard L. De Steno's ("ALJ") denial of Mitchell's claim for supplemental security income ("SSI") under Section 1614(a)(3)(A) of the Social Security Act (the "Act").

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **AFFIRMS** the Commissioner's decision.

**PROCEDURAL AND FACTUAL BACKGROUND**

On November 3, 2006, Mitchell filed for SSI for an alleged disability starting on July 1, 2003. (ALJ's Dec. at 1.) Her claim was initially denied on June 22, 2007, and again upon reconsideration on November 8, 2007. (*Id.*) Mitchell requested a hearing that was held on January 28, 2010, before the ALJ, (*Id.*), who issued a ruling against her on February 9, 2010.

(*Id*. at 8.)  Subsequently, the Appeals Council denied Mitchell's request for review.  (Appeal Council Dec. at 1.)  Thereafter, Mitchell filed this appeal with the Court.  (Pl.'s Br. at 1, July 7, 2010.)

A.     **Employment History**

Plaintiff, Eshon Mitchell, was born on May 29, 1969.  (Eshon Mitchell Hr'g Tr. at 4, January 28, 2010.)  She did not attend college but did receive her General Equivalence Diploma.  (*Id*. at 5.)  Mitchell's employment history is sparse but some time after 1995 she began working off the books full-time as a secretary for her uncle's tax accounting firm.  (*Id*. at 5-6.)  She worked there for about 10 or 11 years.  (*Id*. at 6.)  She lifted and carried whatever she had to for the purposes of her job but her main functions were filing paperwork, taking care of clients, keeping the office clean, and running errands.  (*Id*. at 6-7.)  Her work involved lifting papers, files, and groceries from food shopping and "whatever [her uncle] needed done."  (*Id*. at 7.)

B.     **Medical History**

Mitchell claims her disability began in July 2003 due to damage to her left knee, bronchitis, and depression.  (ALJ's Dec. at 5.)  In July 2003 she had an altercation with her ex-fiancé that caused her to seriously injure her knee.  (Tr. at 8; Ex. 2E at 2.)  Prior to the July 2003 incident, Mitchell had been treated at Jersey City Medical Center on June 5, 2003 for injuries she sustained during a family argument.  (Ex. 2F at 1.)  An x-ray performed during that time revealed a tibial plateau fracture and a one-millimeter depression in Mitchell's left leg.  (*Id.*)  Mitchell underwent surgery on June 8, 2003, for "[a] left tibial plateau fracture open reduction internal fixation (ORIF) with [a] Synthes recon locking plate."  (*Id.*)  After the procedure, the surgeon noted that Mitchell "tolerated the procedure well without any complications."  (*Id.* at 20.)  The hospital discharged Mitchell on June 11, 2003.  (*Id.* at 1.)  A subsequent x-ray done on June 27,

2003, showed that alignment was satisfactory and that there was no new fracture visible. (Ex. 3F at 23.) A follow up on July 25, 2003, taking place after the attack from her fiancé, was cited as being "unremarkable" and showed that Mitchell's knee and ankle joints appeared to be intact. (*Id.* at 12.)

On October 24, 2005, Mitchell had a diagnostic imaging examination performed on her left knee. (Ex. 9F at 2.) The exam showed that the lateral portion of the knee was difficult to evaluate, but "there appear[ed] to be an oblique tear of the posterior horn of the lateral meniscus." (*Id.*) The doctor also noted that the medial meniscus was "grossly intact but there may [have been] some degenerative signal[s]." (*Id.*)

Mitchell went to Greenville Hospital on July 6, 2007, after falling down several stairs. (Ex. 6F at 2.) She complained of pain on the left side of her body and her right hand. (*Id.*) An x-ray of her right elbow, wrist, and hand showed no sign of fracture or dislocation. (*Id.* at 9, 12, 14.) Additionally, the x-rays of Mitchell's spine showed no abnormalities. (*Id.* at 11.) An x-ray of her pelvis, however, showed that there were multiple phleboliths within her pelvis, but that the osseors structures were intact, the soft tissue was normal, and there where no acute findings to note. (*Id.* at 10.)

On June 4, 2008, Mitchell went to Christ Hospital's emergency room with complaints of painful urination and vomiting. (Ex. 10F at 1.) The hospital examination noted that Mitchell smoked one pack of cigarettes a day and was a chronic alcoholic. (Ex. 11F at 7.) No mention was given however to the problems Mitchell allegedly has with her leg or whether or not she used a cane. (*Id.*) The hospital discharged Mitchell to her home on June 6, 2008. (*Id.* at 72.)

Mitchell's most recent CT scan of her left knee occurred on October 30, 2008. (Ex 12F at 1.) The results showed that "[Mitchell's] visualized proximal fibular bone and femoral

3

condyle [were] intact." (*Id.*) The results did show however that she likely had medical patellar retinacullum injury. (*Id.*)

**C.     Daily Activities and Residual Functional Capacity**

Mitchell allegedly suffers from a combination of severe impairments and an impairment to her left knee. (Tr. at 3.) Her primary care physician continues to prescribe pain medication for her and she is currently being treated for insomnia. (*Id*. at 4.) She also began seeing a psychiatrist on January 20, 2010, eight days prior to the ALJ hearing. (*Id*. at 12.) At her January 2010 hearing, Mitchell testified that she was in a lot of pain right after the surgery. (*Id*. at 8.) She stated that the pain had subsided for about a year, but at the time of the hearing, the pain was "terrible." (*Id*.) Mitchell is able to sit for about twenty minutes or until her leg starts hurting. (*Id*. at 9.) Additionally, Mitchell stated that her doctor told her that she needed another surgery to remove the pins and that there was a 50/50 chance that she will be able to walk again after that surgery. (Tr. 8.) She also stated that she walks with a cane with a seat attached to it because her leg gives out on her sometimes, and she falls. (*Id*. at 9.)

She also testified that she has lived alone for three years, and that her best friend accompanies her to doctor's appointments, goes food shopping for her, and cleans for her. (*Id*. at 9-10.) Mitchell claimed that she can do very little for herself and stays home most days watching television, doing puzzles, and talking on the telephone. (*Id*. at 10.) Mitchell also stated that her knee gives out at least once per week and she suffers from throbbing and sharp, shooting pains. (*Id*. at 11.)

Although Mitchell has some health issues, the ALJ found that she was not under a disability as defined by the Social Security Act. (ALJ's Dec. at 8.) The ALJ found that considering Mitchell's age, education, work experience, and residual functional capacity there

4

are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*) Mitchell was only thirty-seven at the time of the hearing and considered young by the standards used to decide SSI eligibility. (*Id.*) She had a high school education and spoke English. (*Id.*) She was also formerly employed as a receptionist/secretary for an accountant. (*Id.* at 7.) Furthermore, although she had trouble sitting or standing for too long, the evidence indicates that Mitchell's condition was adequately treated with surgery and physical therapy. (*Id.* at 6.)

**LEGAL STANDARD**

In social security appeals cases, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F.App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F.App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, 2009 U.S. Dist. LEXIS

32110, at *7 (M.D.Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because we would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F.App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). The court is required to give deference to the ALJ's findings and affirm if substantial evidence supports the ALJ's findings. *Scott v. Astrue*, 297 F.App'x 126, 128 (3d Cir. 2008). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F.App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**DISCUSSION**

An individual is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that she is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Burnett v. Comm'r of Social Sec. Admin.,* 220 F.3d 112, 118 (3d Cir. 2000) (alterations in original) (citations omitted) (internal quotation marks omitted). Only then is an individual to be considered unable to engage in "substantial gainful activity." *Burnett*, 220 F.3d at 118. Subjective complaints of pain, alone, cannot establish disability; however, subjective testimony by the individual that is consistent with "objective medical evidence" may be considered by the ALJ. 42 U.S.C. § 423(d)(5)(A). An individual must prove that the "medical signs and findings" related to her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . ." *Id.*

The SSA utilizes a five-step sequential analysis to determine disability. *Cruz*, 244 F. App'x at 480 (citing 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v)).

The United States Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990) (internal citations omitted). The burden of persuasion lies with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). Once the claimant shows that the impairment prevents him from performing his past work, the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy." *Id.* (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

**Steps One and Two**

First, the ALJ must determine whether Mitchell was, at the time of filing, engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). SGA is work that involves significant physical or mental activities and done for pay or profit. 20 C.F.R. § 416.972(a)-(b). Here, the ALJ found that Mitchell has not engaged in substantial gainful activity since the November 3, 2006 SSI Benefits application date. (ALJ's Dec. at 3.)

7

Next, in order to find that Mitchell was disabled under the Act, she must have a severe impairment that limits her mental or physical ability to do basic work activities.  20 C.F.R § 416.920(c).  Here, the ALJ determined that Mitchell had a severe impairment "involving residual effects of a left-tibia plateau fracture, and surgery and tears in the left knee."  (ALJ's Dec. at 3.)  Additionally, the ALJ found that this impairment "impose[d] more than a slight limitation on [Mitchell's] ability to perform work related activity."  (*Id.*)

The ALJ also stated however that there was not sufficient evidence to establish a severe impairment with respect to depression.  (*Id.*)  The Court finds that the ALJ was correct in deciding that there was not substantial evidence to establish a severe impairment involving depression.  Mitchell only saw a psychiatrist once, eight days before the ALJ hearing.  (*Id.*)  Furthermore, neither the ALJ nor Mitchell mentioned her disability claim regarding bronchitis, therefore this Court will not address it.

**Step Three**

At step three, the ALJ is required to "compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work."  *Caruso v. Comm'r of Soc. Sec.*, 99 F.App'x 376, 379 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(d)).  An ALJ is required to compare the claimant's impairments to the impairments in the Commissioner's listings to determine if she has one of the listed impairments or a medical equivalent that would constitute a valid disability to qualify for SSI benefits.  20 C.F.R. § 404.1526.  If Mitchell has one of the listed impairments or an equivalent, then she is disabled.  20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Additionally, at step three the ALJ must "'fully develop the record and explain his findings . . . including an analysis of whether and why [each of claimant's] impairments, or those

8

impairments combined, are or are not equivalent in severity to one of the listed impairments.'" *Rivera v. Comm'r of Soc. Sec.*, 164 F.App'x 260, 263 (3d Cir. 2006) (second alteration in original) (quoting *Burnett*, 220 F.3d at 120). Although conclusory statements alone cannot adequately support an ALJ's holding, should there be substantial evidence on record to support the ALJ's findings, such conclusory statements are harmless. *See id.* The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Padilla v. Comm'r of Soc. Sec.*, No. 09-2897, 2010 WL 2346650, at *5 (D.N.J. June 9, 2010) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Instead, the Third Circuit advises us to consider the ALJ's decision as a whole to determine whether the ALJ considered all relevant factors at step three. *Padilla,* 2010 WL 2346650, at *5. As discussed in *Rivera*, "the ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review." 164 F.App'x at 262-63 (3d Cir. 2006).

A claimant is disabled if she suffers from a major joint dysfunction such as subluxation, contracture, bony or fibrous ankylosis; and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings show joint space narrowing, bony destruction, or ankylosis of the affected joint(s). 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.02. This joint dysfunction must result in an "inability to ambulate effectively." Id. at § 1.03. A claimant is disabled under § 1.03 if she has had "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint with inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id*. For purposes of both sections, "[i]nability to ambulate effectively" is defined as "an extreme limitation of the ability to walk, i.e., an impairment(s) that

9

interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.00(B)(2)(b)(1). In addition:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . . [And] travel without companion assistance . . . . Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
>
> [20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.00(B)(2)(b)(2).]

The ALJ found that Mitchell did not "have an impairment or combination of impairments that [met] or medically equal[ed] any of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (ALJ's Dec. at 3.) Moreover, the ALJ found that neither Section 1.02 nor Section 1.03 applied. (*Id.* at 4.) He found that Section 1.02 did not apply because there was no evidence of a major dysfunction that resulted in inability to ambulate effectively. (*Id*. at 4.) The ALJ further stated:

> There is no evidence of a major dysfunction of a joint characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral weigh-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.
>
> [*Id.*]

Similarly, the ALJ found that Section 1.03 did not apply because there was not sufficient evidence of "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . ." (*Id.*)

Both potential impairments require a finding that Mitchell cannot ambulate effectively or perform fine and gross movements. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(B)(2)(a). Mitchell testified that she walks with a cane, and recently began using a cane with a seat. (Tr. at 9.) She also stated that if she feels like she needs to sit down, she sits on the seat for a while and then "proceed[s] to do whatever it is [she is] trying to do." (*Id.*) Mitchell's use of a seated cane is not an equivalent to the two canes, walker or two crutches that Section 1.00(B)(2)(b) considers in its definition of an inability to ambulate effectively. (Def.'s Br. at 11.) Furthermore, there is information in the record that calls into question Mitchell's reliance on her cane. (*See* Ex. 11F at 15, 31, 58, 62.) In 2008, when she was hospitalized with acute pancreatitis, her hospital records did not note any impaired mobility or use of a cane. (*See Id.*) Additionally, nowhere in the record is there discussion of the use of a cane save for the hearing transcript. This shows that there was sufficient evidence in the record on which the ALJ could base his decision.

**Step Four**

Since there is not substantial evidence to find Mitchell disabled under one of the medical impairments, the analysis continues to determine whether Mitchell can perform her past employment based on her residual functional capacity. *See* 20 C.F.R. § 416.920(e). A test of residual functional capacity looks at all of the relevant medical and other evidence in a claimant's case record. 20 C.F.R. § 416.945(a)(3).

First, the ALJ must determine whether Mitchell is suffering from a medically determinable physical or mental impairment. 20 C.F.R. § 416.929. Subjective complaints of

11

pain must be considered and may support a finding of disability. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984). However, without more, such complaints do not in themselves constitute disability. *Id.* An ALJ must consider all of the claimant's symptoms, including pain, and weigh them against the objective medical evidence. 20 C.F.R. § 416.929(a). Second, if the impairment is reasonably expected to produce her pain, the ALJ must determine the extent that the impairment limits Mitchell's ability to work. 20 C.F.R. § 416.929(b). Finally, the ALJ must look at Mitchell's employment prior to her disability claim and determine whether she is able to perform that same work despite her impairment. 20 C.F.R. § 416.920(f).

Here, the ALJ concluded that Mitchell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (ALJ's Dec. at 6.) Additionally, the ALJ noted "[a]lthough the claimant testified that her pain is terrible now, the record is devoid of any clinical findings to support her complaints to the degree alleged." (*Id.*) Indeed, after Mitchell's surgery in June 2003, she followed up with doctors and her knee x-rays and MRIs were "unremarkable" and showed that the bones were intact. (Ex. 3F at 12.) The ALJ noted that her 2005 MRI showed an oblique meniscal tear. (ALJ's Dec. at 6.) However, nothing in the medical records indicated "that this condition required medical management or surgical intervention." (*Id.*) Additionally, the ALJ noted that a 2008 MRI of Mitchell's knee showed no evidence of this meniscal tear. (*Id.*) The record does not show any complaints of post-surgery pain until July 6, 2007, when Mitchell fell down several stairs and landed on her left side. (Ex. 6F at 2.) Furthermore, her x-rays showed no acute findings with her pelvis and no abnormalities with her spine. (*Id.* at 10, 11.) Complaints of pain with respect to an

unrelated illness were noted on June 4, 2008, when she was admitted to the hospital with acute pancreatitis. (Ex. 11F at 77.) The only mention of further pain was during her testimony before the ALJ where she described the pain to be throbbing, sharp, and shooting. (Tr. at 11.) However, as the ALJ points out, the record is devoid of any clinical findings to support her assertions of pain to the degree alleged. (ALJ's Dec. at 6.) Thus, there was substantial evidence for the ALJ to conclude that the existence and intensity of Mitchell's pain were not credible.

Because the ALJ found that Mitchell's complaints of pain were unpersuasive, he found that her condition would not impose "any limitation on her ability to sit for prolonged periods or to stand and walk for up to two hours in an eight-hour day" and thus would not negate her from performing all meaningful work. (*Id.*) Mitchell argues that the ALJ erred in that he "rejected the treating physician's opinion of disability . . . ." (Pl.'s Br. at 26.) The ALJ, however, may disregard form assessments by physicians where there exists contrary medical evidence on the record to counter the findings of the form assessment. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The ALJ disregarded Dr. Medrano's report because it was on a "scratch sheet checklist of no probative value and . . . not supported by the objective medical evidence." (ALJ's Dec. at 7.) Additionally, as Defendant noted, Dr. Medrano's report does not cite any medical evidence in support of his opinion that Mitchell was incapable of working and contained inconsistencies with other portions of the record. (Def.'s Br. at 16.) Notably, the report does not discuss Mitchell's chronic alcoholism, which was highlighted previously in her medical records. (Ex. 11F at 7.) This would tend to show that Dr. Medrano was not familiar with Mitchell's medical history, or that he did not thoroughly examine her before filling out the examination report form. Thus, the ALJ had substantial evidence to disregard Dr. Medrano's report.

Further, Mitchell testified that she was a full-time receptionist for her uncle. (Tr. at 5-6.) Although the ALJ does not list her tasks at her job, she sufficiently testifies as what these tasks were. (*Id*. at 6-7.) She told the judge that her duties included meeting and greeting clients, food shopping, running errands, filing, keeping the office clean, and light typing. (*Id.*) Her admission of her general duties therefore shows that she had—and used—the skills needed to be a gainfully employed receptionist. Additionally, at her ALJ hearing, Mitchell testified that she "worked" for her uncle "off the books" for several years. (*Id*. at 5.) "Off the books" typically means employment for pay without reporting earnings for tax purposes. Consequently, the ALJ based his conclusion that Mitchell was able to perform work functions and had the residual functional capacity for performing her previous employment on substantial evidence.

**Step Five**

Finally, if the ALJ determines that Mitchell cannot perform her past work, then he must inquire as to whether, based on her age, education and work experience, she can make an adjustment to any other work in the national economy. 20 C.F.R. § 416.920(g). The ALJ must consider whether Mitchell has exertional or nonexertional limitations. *See* 20 C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id*. A limitation is nonexertional if it affects the claimant's "ability to meet the demands of [a job] other than the strength demands." *Id.*

If the limits are solely exertional, the ALJ can use medical-vocational guidelines to determine whether Mitchell can perform any other job in the national economy. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2. However, if both exertional and nonexertional limitations exist, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national

economy that she can perform. *See Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000). Here, the ALJ found that Mitchell is able to perform her past work as a receptionist and other jobs that exist in the national economy in spite of her impairments. (ALJ's Dec. at 7-8.) Since her limitations were strength based (i.e., sitting standing, walking, lifting, carrying, etc.), the ALJ correctly found that she did not suffer from any nonexertional limitations and applied the guidelines.

Under Section 416.963 a younger person (under age 50), with at least a high-school education and previous work experience, is not disabled unless the ALJ finds particular limitations specific to the individual. *See* 20 C.F.R. §§ 416.963(c), 416.964(b)(4), 416.965. An ALJ must make an "assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base." 20 C.F.R. Pt. 404, Subpart P, App. 2, § 201.00(h)(3). Additionally, this finding "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust." *Id.*

Considering Mitchell's age, education, work experience, and residual functional capacity the ALJ found that she was not disabled under the conditional requirements of 20 C.F.R. § 416.920(f). (ALJ's Dec. at 8.) As noted above, there was substantial evidence in the record to support the ALJ's finding that Mitchell's injury did not limit her ability to work. Since her medical records do not support the claims of pain and physical limitations that she testified to during her ALJ hearing, the ALJ had substantial evidence to find that Mitchell was able to adjust to perform another job that existed in the national economy, and was therefore, not disabled.

15

**CONCLUSION**

For the foregoing reasons, the Court holds that substantial evidence supports the ALJ's decision. Accordingly, the Court **AFFIRMS** the judgment of the ALJ.

s/ Susan D. Wigenton U.S.D.J.

Orig:     Clerk
cc:       Parties